The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHERRI O'NEIL,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT MORRIS PEAK; COURTIFF INC., d/b/a AAA ALL-PRO AUTO CARE; RORI ENTERPRISES INC., d/b/a AAA ALL PRO AUTO REPAIR and/or ALL TUNE & LUBE BELLEVUE; ALEX KAGARLITSKY; JOHN JENSEN; DANIEL TATE; JOHN DOES 1-5; JANE DOES 1-5,<br><br>Defendants. | No. C08-1041-JCC<br><br><br><br>ORDER |

This matter comes before the Court on Defendant Peak's Motion for Summary Judgment to Dismiss Plaintiff's First Claim for Relief and Sixth Claim for Relief (Dkt. Nos. 73 & 85), Defendant Rori Enterprises' Motion for Summary Judgment and Joinder in Defendant Peak's Motion for Summary Judgment (Dkt. No. 75), Defendant Courtiff Inc.'s Joinder in both these motions (Dkt. No. 88), Plaintiff's Responses (Dkt. Nos. 92 & 93), and the Replies of Defendants Rori Enterprises, Peak, and Courtiff Inc. (Dkt Nos. 97, 98 & 100 respectively.) The Court, having considered the papers filed by the parties, and being otherwise duly informed, hereby ORDERS as follows. Defendant Peak's Motion is GRANTED IN PART. Upon dismissal of Plaintiff's first claim for relief, the Court has no jurisdiction over this case. Plaintiff's remaining claims are DISMISSED without prejudice for lack of jurisdiction.

## I. BACKGROUND

This action arises from Defendant Robert Morris Peak's February 2006 arrest for felony stalking of Plaintiff, his ex-wife. Prior to his arrest, Defendant Peak frequently contacted Plaintiff O'Neil's place of employment and her coworkers seeking information about her. (Second Am. Compl. at 10 (Dkt. No. 50)).) On January 26, 2006, Ms. O'Neil resigned from her at-will employment with Kforce due to fear for her own safety and the safety of her coworkers, and because of the fear and stress Defendants' actions caused her. (*Id.*) Between August 2005 and January 2006, Plaintiff changed the locks on her home three times in response to Defendants' actions. (*Id.*) In August, 2006, Ms. O'Neil began working at Nordstrom. (*Id.* at 13.) In September 2006, Defendant Peak was released from jail. (*Id.*) Plaintiff alleges that she lost her job at Nordstrom around the same time due to safety concerns with Mr. Peak. (*Id.*) Plaintiff alleges that she sold her home below market value in November 2007, and moved to an undisclosed location in an effort to avoid Mr. Peak. (*Id.*) Ms. O'Neil also alleges that Defendants' actions caused her to incur medical expenses. (*Id.*) The remaining facts of this case have been discussed previously (Order on Summ. J. at 2–3 (Dkt. No. 103)) and will not be repeated here.

Jurisdiction in this case is based on 28 U.S.C. § 1331 federal question jurisdiction. The only federal law referenced in Plaintiff's Second Amended Complaint is the Racketeer Influenced and Corrupt Organizations (RICO) Act, which creates a private cause of action under 18 U.S.C. § 1964(c). Defendant now moves for summary judgment dismissal on two of Plaintiff's causes of action: her civil RICO claims under 18 U.S.C. § 1964(c) and her claim for interference with contractual relations. Because it determines whether or not this Court has subject matter jurisdiction, this Order will address the RICO cause of action first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (U.S. 1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (internal quotations omitted).

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that nonmovants have failed to produce evidence that supports an element essential to the nonmovants' claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

The facts in this case are not generally in dispute. The parties' disagreements have to do with what legal consequences flow from them, making this a case where summary judgment is appropriate.

### B. The Racketeer Influenced and Corrupt Organizations Act (RICO)

The elements of a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property,'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005), cert. denied, 547 U.S. 1192 (2006) (citations omitted). Plaintiff's RICO claim is predicated on alleged violations of federal statutes prohibiting identity theft (18 U.S.C.

§1028(a)(7) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a). (Second Am. Compl. at 14–18 (Dkt. No. 50)).)

Under RICO's mechanism for a private cause of action, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c). To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was "by reason of" the RICO violation, which requires the plaintiff to establish proximate causation. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

**III. ANALYSIS**

Ms. O'Neil claims that she has suffered various injuries, but it is unclear which of them constitute injuries to business or property within the meaning of 18 U.S.C. §1964(c). In her Second Amended Complaint, Plaintiff alleges that, "as a direct and proximate result of Defendants' pattern of racketeering activity, Plaintiff has been injured in her property and business within the meaning of 18 U.S.C. § 1964(c) in that": (1) she was forced to leave her job at Kforce and go into state-facilitated hiding; (2) she was terminated from her position at Nordstrom; (3) she was forced to change the locks on her home on at least three occasions; (4) she incurred medical expenses for herself and her children; and (5) she was forced to relocate from her home in Kirkland, Washington, which caused her to incur out-of-pocket moving expenses and necessitated the sale of her Kirkland home at below-market value. (Second Am. Compl. at 17–18 (Dkt. No. 50).)

In Ms. O'Neil's response, however, she writes: "Plaintiff alleged under RICO only that Defendants directly interfered with her employment in the course of Mr. Peak's stalking, which caused her to lose her job. Any claim for emotional distress for which she seeks compensation is asserted under state law." (Pl's. Resp. at 16 (Dkt. No. 92).) The Court addresses all five

categories of injury in the name of thoroughness, but determines that none of them amounts to a business or property interest under Washington law.

**A. Standing Under RICO**

Standing is a threshold issue. Although it is clear that a Plaintiff must show an "injury to business or property," there is no clear consensus among courts as to what this phrase means. A major case in the Ninth Circuit on this subject is *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005). In that case, the plaintiff alleged that LAPD officers had fabricated evidence and tampered with witnesses to obtain a false conviction against him. *Id.* at 898. The plaintiff alleged that he was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated. *Id.* As a result, he claimed, he suffered injury to his business and property in many ways, including: lost employment, employment opportunities, and the wages and other compensation associated with said business, employment, and opportunities. *Id.*

The court concluded that Diaz suffered two types of injuries, one permitting recovery and one not. The court denied recovery for Diaz's claims of false imprisonment, holding that such claims are better understood as a personal injury, and are not sufficient to confer RICO standing. *Id.* at 902; *see also Oscar v. University Students Co-Op Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992) ("[P]ersonal injuries are not compensable under RICO."). However, for Diaz's claims of intentional interference with contract and interference with prospective business relations, the court allowed his suit to proceed, recognizing that these are property injuries under California state law. *Diaz*, 420 F.3d at 900. Such an injury is an indispensable element of standing: "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Id.* Thus, in order to achieve standing under § 1964(c) after *Diaz*, a plaintiff must show harms to a state-created property interest.

The plaintiff's burden does not end there. Conclusory references to state-created property interests will not suffice; a plaintiff cannot dress up allegations of personal injury to meet pleading requirements. The Court will not recognize standing where a plaintiff merely alleges a

loss of wages: "[O]ur approach does not create RICO liability for every loss of wages resulting from a personal injury." *Diaz*, 420 F.3d at 900. Nor are mere claims of lost employment sufficient: "The dissent is wrong to suggest that our approach would confer standing on any plaintiff RICO-suave enough to allege lost employment." *Id.* at 901. The facts of Diaz suggest a more stringent standard. In *Diaz*, the plaintiff was "rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." *Id* at 897.

Similarly, *Guerrero v. Gates* involved a man who claimed that police had used excessive force and planted evidence during a search that led to a conviction for possession of narcotics. 442 F.3d 697 (9th Cir. Cal. 2006). Guerrero alleged that he was "unable to pursue gainful employment while defending [himself] against unjust charges and/or while unjustly incarcerated," and the court reversed his dismissal for lack of standing. *Id.* at 707.

A district court in California has limited the *Diaz* holding to its specific facts:

> "For example, in stark contrast to Diaz, Plaintiff does not allege that he has actually lost employment or employment opportunities because he was forced to defend against unjust charges while unjustly incarcerated. In fact, Plaintiff fails to even allege he was arrested or incarcerated at all, let alone forced to defend against any charges."

*Camarillo v. City of Maywood*, 2008 LEXIS 85386, *6–7 (C.D. Cal. Aug. 27, 2008).

In contrast to these cases is *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992). There, Doe alleged that after her relationship with Roe went sour, he threatened her safety, which made her invest in a home security system and miss several days of work. *Id.* at 769–70. The court found that "Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO." *Id.* at 770. The Ninth Circuit explicitly endorsed this reasoning in *Diaz.* 420 F.3d at 900. To equate Diaz's injury with Doe's injury, the court stated, would be to "confuse the mere loss of

something of value (such as wages) with injury to a property interest (such as the right to earn wages)." *Id.* at 900 n. 1. Thus, a plaintiff may not merely make a conclusory statement about business and property injuries. Rather, these cases show that in order to achieve RICO standing, a plaintiff must show not merely that going to work was dangerous or distressing, but that it was impossible.

**1. State-created Property or Business Interest.**

Plaintiff claims that her injury amounts to tortious interference with contractual relations or business expectancy, which the Supreme Court of Washington defines as: (1) the existence of a valid contractual relationship; (2) defendant's knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damages. *Commodore v. Univ. Mech. Contractors, Inc.*, 839 P.2d 314, 322 (Wash. 1992).

Defendant responds that Washington courts have excluded at-will employees from this definition. *See Woody v. Stapp*: "Generally, at-will employees do not have a business expectancy in continued employment." 189 P.3d 807, 811 (Wash. Ct. App. 2008) (citing *Raymond v. Pac. Chem.*, 98 Wn. App. 739, 747, 992 P.2d 517 (1999). The Court declines to interpret Washington state law on the grounds that it is unnecessary. Even if the Court were to conclude that interference with at-will employment could amount to an injury to business or property, Plaintiff's allegations are personal injuries in the guise of injuries to business or property.

**2. Loss of Employment at Kforce and Nordstrom**

Plaintiff's account of her ordeal lists personal injuries, but not injuries to business or property. The paragraph of her Complaint that explains why she left her employment at Kforce reads: "On or about January 26, 2006, Plaintiff resigned from her job at Kforce due to fear for her own safety and the safety of her coworkers, and because of the fear and stress that she was experiencing due to Defendants' actions." (Second Am. Compl. at 10 (Dkt. No. 50).) In her Response to the instant motion, Plaintiff states that her fears and distress led to her quitting her job: "I didn't know what [defendant's] intentions were, and it was humiliating and frightening,

and I didn't want to be responsible in case he hurts somebody." (Pl's. Resp. at 22 (Dkt. No. 92).) These allegations are far closer to the personal injuries that were "plainly derivatives of [Doe's] emotional distress" in *Doe*, 958 F.2d at 770, than they are to the loss of the "right to earn wages" resulting from Diaz being "rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." 420 F.3d at 897. "Most personal injuries . . . will entail some pecuniary consequences. Perhaps the economic aspects of such injuries could, as a theoretical matter, be viewed as injuries to "business or property," but engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary." *Doe*, 958 F.2d, at 770. While no doubt deeply affecting, Plaintiff's injuries do not create RICO standing.

**3. Expenses Incurred Changing Locks, Medical Expenses, and Moving Expenses**

Plaintiff's other expenditures are also better understood as personal injuries than damage to business or property. With respect to her locks, these facts are almost identical to those in *Doe v. Roe,* which, the Ninth Circuit agreed, concerned personal injury, and not injuries compensable under RICO. *Diaz*, 420 F.3d at 900. There, the Seventh Circuit found that "Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO." *Doe*, 958 F.2d at 770. Because they fall under the category of personal injury, Ms. O'Neil's expenses are not recoverable. *Oscar v. University Students Co-Op Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992) ("[P]ersonal injuries are not compensable under RICO."). Ms. O'Neil's claims for medical expenses fail for the same reason.

Plaintiff's expenses incurred during her move and from the sale of her home are likewise insufficient to meet the "business or property" threshold. Plaintiff does not assert the appropriateness of these injury claims in her Response, and the Court agrees with the Defendant that these injuries are either personal or speculative and cannot support § 1964(c) standing. *Berg v. First State Ins. Co.*, 915 F.2d 460, 463–64 (9th Cir. 1990). ("A plaintiff cannot maintain a RICO claim where the loss he has suffered is "purely speculative.").

1      Accordingly, because Plaintiff has failed to establish RICO standing as a matter of law,
2 her RICO claims are DISMISSED.

**B. Jurisdiction**

Finally, Plaintiff brings a claim against Defendants under the Washington State Consumer Protection Act ("WCPA"). WASH. REV. CODE § 19.86. Non-diversity state claims do not come under the Court's original jurisdiction. The only possible basis in which the Court could exercise jurisdiction over Plaintiff's WCPA claims would be under federal supplemental jurisdiction pursuant to 28 U.S.C. § 1367. But if the district court does not have original jurisdiction, it cannot exercise supplemental jurisdiction. *Gherini v. Lagomarsino*, 258 Fed. Appx. 81, 84 (9th Cir. 2007) (Where the district court had no subject-matter jurisdiction over plaintiff's RICO claims, it had no discretion to exercise supplemental jurisdiction over remaining state-law claims.) Here, because Plaintiff lacked standing to bring any federal claims against Defendants EVHA, Bud Alkire, and Jane Doe Alkire, the Court cannot exercise supplemental jurisdiction over Plaintiff's remaining state claim. Accordingly, Plaintiff's WCPA claim against Defendants EVHA, Bud Alkire, and Jane Doe Alkire is DISMISSED without prejudice for lack of jurisdiction.

**IV. CONCLUSION**

Defendants' Motions for Summary Judgment are GRANTED. (Dkt. Nos. 73, 75 & 88.) Plaintiff's remaining claims are DISMISSED without prejudice for lack of jurisdiction. The Clerk is DIRECTED to close the case.

DATED this 5th day of January, 2010.

_____

John C. Coughenour
UNITED STATES DISTRICT JUDGE